IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

       Plaintiff,

v.

KENNETH K. GAINES,

       Defendant.

Criminal No. 15-0030
ELECTRONICALLY FILED

**Findings of Fact and Conclusions of Law re: Motion to Suppress (doc. no. 36)**

Defendant has been charged in a one count Indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Presently before the Court is Defendant Kenneth Gaines' Motion to Suppress. Doc. No. 36. This Court held a Suppression Hearing on the Motion on August 18, 2015. The following witnesses testified: Detective Calvin Kennedy, Ms. Lachara Gaines (sister of Defendant), and Ms. Katrae Grimmitt. After the hearing, the parties each filed their Proposed Findings of Fact and Conclusions of Law. Doc. Nos. 44 and 47. In light of this Court's Findings of Fact and Conclusions of Law, as set forth below, Defendant's Motion to Suppress will be denied.

**I.    Findings of Fact**

Detective Calvin Kennedy testified that on September 10-11, 2014, he was working in a plain clothes capacity in the Beltzhoover area, which is regarded as a high crime area in the City of Pittsburgh and he works there approximately 3-5 days per week. Detective Kennedy has been an Officer with the City of Pittsburgh Bureau of Police for 21 years, and has made hundreds of

1

arrests in the Beltzhoover area, including the prior arrest of, and previous encounters with Defendant. On the night in question, Detective Kennedy was patrolling the Beltzhoover area in a "proactive" rather than investigatory manner, and he testified that this area is the "busiest" neighborhood out of the several zones for crime related issues such as "guns, and drugs and violence." Doc. No. 46 at p. 7. Detective Kennedy was the driver of an unmarked police vehicle, while Detective Baker was the passenger.

While driving on Industry Street towards the back of Red's Bar on 304E Warrington Avenue, Detective Kennedy observed Defendant from a distance ranging between 150-300 feet or 300-400 feet (Detective Kennedy testified at another hearing that the distance was approximately 300-400 feet but these estimates are not inconsistent because the distance of 300 feet is included in both estimates). Detective Kennedy, having had previous encounters with Defendant, knew Defendant was not permitted to carry a firearm. Detective Kennedy testified that while he was not 100% sure, he believed that it was Defendant, based upon his build.

From a distance, Detective Kennedy then observed Defendant grab the right side of his waistband and run towards E. Warrington Avenue in the direction of Red's Bar. Detective Kennedy then drove the vehicle right onto Vincent, and left (outbound) onto E. Warrington Avenue. Detective Kennedy did not activate the sirens of the vehicle, or otherwise attempt to announce his presence to Defendant.

According to Detective Kennedy, once he observed Defendant running on a sidewalk on E. Warrington Avenue while he was driving in the vehicle next to Defendant, Detective Kennedy ordered Defendant to stop. Nearly simultaneously, Defendant pulled out the firearm from his waistband on his right side, and Detective Kennedy ordered Defendant to again stop and to drop the firearm. Notably, Detective Kennedy expressed concern for Defendant as he testified, "I told

2

Kenneth Gaines to stop and drop the gun," . . . "I didn't want to shoot Kenneth. I'm sure Kenneth didn't want to shoot me. I was just telling him, hey, Kenneth, drop the gun. This isn't worth it. Stop running." Doc. No. 46 at p. 20. Defendant continued to run towards Red's Bar on E. Warrington Avenue.

Once Defendant arrived at Red's Bar, he turned left to the front door of the bar, and Defendant struggled with the door, as the front door of Red's Bar is typically locked. Meanwhile, Detective Kennedy put the vehicle in park, exited the vehicle, and began a foot pursuit of Defendant. Detective Kennedy chased Defendant into the bar, past a metal detector which was observed by Ms. Grimitt, and immediately up the stairs to the second floor.

According to the testimony of Ms. Grimmitt, a bystander at the bar with whom Defendant had no prior relationship, who was sitting near the entrance conversing with a friend and having a non-alcoholic drink, Defendant tripped and fell forward right over the metal detector upon entering the bar. Ms. Grimitt credibly testified that she did not see Defendant carrying a firearm in his hands, but that does not necessarily imply that he did not have a firearm in his waistband, and it is not inconsistent with Detective Kennedy's testimony that he observed Defendant holding a firearm at other points during the pursuit.

Ms. Gaines, the sister of Defendant, stood outside in the front of the bar, while talking with another person, during this encounter and testified that she had a brief view of Defendant and he was not carrying a firearm. She further testified that he did not need to because if he was with her, he knew he did not need to carry a firearm as she had a license to carry a firearm. The record is silent as to whether Defendant was with Ms. Gaines prior to when Detective Kennedy observed him on Industry Street, but the record is clear that Defendant was not with his sister in the moments prior to his approach at Red's Bar. Instead, Detective Kennedy had a more

3

comprehensive view of Defendant's actions, having observed him during this entire incident, whereas Ms. Gaines and Ms. Grimmitt observed him only briefly and in a limited capacity.

The Court notes that the record is also silent as to whether the metal detector was inactive, but a reasonable inference is that it was inactive because there was no testimony that it sounded when either Defendant or Detective Kennedy entered the bar and it is undisputed that Detective Kennedy was carrying a firearm.

Nonetheless, Detective Kennedy testified that when they got to the top of the stairs, he saw Defendant discard the firearm from his right hand towards the front portion of the bar where a booth is located. Defendant continued to run from Detective Kennedy, and hid behind an individual seated in a chair. Detective Kennedy then drew his firearm, and ordered Defendant to the ground, who complied without further incident. Defendant was then taken into custody.

Detective Kennedy recovered the firearm approximately 30 seconds after the arrest of Defendant, a Beretta pistol. Another unmarked police car of plain clothes detectives also became involved in this incident, subsequent to the apprehension of Defendant.

The Court, after observing the demeanor of the witnesses, finds the testimony of Detective Kennedy to be credible based upon his experience in the Beltzhoover area, his personal knowledge of Defendant, and his observations of Defendant carrying the firearm within a close proximity to Detective Kennedy's vehicle while Defendant was running on the sidewalk on E. Warrington Avenue. Detective Kennedy knew Defendant through prior encounters and arrests, and during the encounter, expressed concern for the safety of Defendant.

While the testimony of Ms. Grimm and Ms. Gaines was also credible, these witnesses only had limited factual knowledge of the incident and could only testify that they did not see a firearm in his hand during the brief seconds that each observed him.

For these reasons, the Court concludes that Defendant possessed a black semiautomatic Beretta firearm on the night of September 10-11, 2014, including when Detective Kennedy personally observed him holding this weapon on Warrington Avenue and when Detective Kennedy witnessed Defendant discard his weapon inside of Red's Bar.

## II. Conclusions of Law

"Law enforcement authorities do not need a warrant to arrest an individual in a public place as long as they have probable cause to believe that person has committed a felony." *United States v. McGlory*, 968 F.2d 309, 342 (3d Cir. 1992) (citing *United States v. Watson*, 423 U.S. 411, 421 (1976)). When a search or a seizure is conducted without a warrant, the Government bears the burden to prove by a preponderance of the evidence that the seizure was lawful. *United States v. Lowe*, 791 F.3d 424, 432 (3d Cir. 2015).

"An analysis of a search and seizure under the Fourth Amendment to the United States Constitution typically proceeds in three (3) stages. First, the Court inquires whether a Fourth Amendment event, such as a search or a seizure, has occurred. Next, the Court considers whether the search or seizure was reasonable. Finally, if the search or seizure was unreasonable, the Court must then determine whether the circumstances warrant suppression of the evidence." *United States v. Moore*, Criminal No. 14-0110, 2014 WL 7338762, at *4 (W.D. Pa. Dec. 22, 2014) (citing *United States v. Dupree*, 617 F.3d 724, 730 (3d Cir. 2010)(other citations omitted).

In this case, the parties agree that no seizure occurred until Defendant was arrested in Red's Bar, as "a seizure occurs when there is either (a) a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful, or (b) submission to a show of authority." *Lowe*, 791 F.3d at 430

As stated, the second step in the inquiry is whether the seizure was reasonable. *Moore,*

2014 WL 7338762 at * 4. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id.* "The determination of whether probable cause exists for a warrantless arrest is fundamentally a factual analysis which that be performed by the officers at the scene." *United States v. Glasser*, 750 F.2d 1197, 1206 (3d Cir. 1984). It is this Court's duty to determine whether the objective facts available to this officer at the time of Defendant's arrest were sufficient to justify a reasonable belief that an offense was being committed by Defendant. *Id.*

At the time of the seizure and arrest of Defendant, Detective Kennedy, as the arresting officer, knew of the following facts and circumstances: (1) Defendant reached for his right side of his waistband on Industry Street upon seeing the vehicle driven by Detective Kennedy, in a manner consistent with reaching for a firearm; (2) Defendant ran from the officers on Industry Street without being provoked; (3) Defendant continued running on East Warrington Avenue, even after being addressed and told to stop by Detective Kennedy; (4) Defendant was prohibited from carrying a firearm; (5) Defendant pulled out a firearm while he was running away from Detective Kennedy on Warrington Avenue; and (6) Defendant discarded the firearm during the foot pursuit on the second floor of Red's Bar, within close proximity of the arresting location.

The Court notes that unprovoked flight, without more, cannot elevate reasonable suspicion to detain and investigate into the probable cause required for an arrest. Rather, a person whom police approach is free to avoid a potential encounter with police by leaving the scene, and the rate of acceleration of the person's gate as s/he leaves away is far too ephemeral a

gauge to support a finding of probable cause, absent some other indicia of involvement in criminal activity. *Florida v. Bostick*, 501 U.S. 429, 437, (1991); Florida v. *Royer*, 460 U.S. 491, 497–98 (1983) ("The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds." (citations omitted)). Unprovoked flight can only elevate reasonable suspicion to probable cause if police have "reasonably trustworthy information or circumstances" to believe that an individual is engaged in criminal activity, as was the case in *United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007).

In this case, the above facts (1-5), which were known to Detective Kennedy based upon his own knowledge, meet or exceed the probable cause threshold. Having already determined that Detective Kennedy's testimony was credible and consistent, the Court agrees that Detective Kennedy possessed "reasonably trustworthy information or circumstances," within his knowledge as a police officer to warrant a prudent person to conclude that the above offense has been committed by Defendant. *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964).

Having found that Detective Kennedy possessed the requisite "reasonably trustworthy information or circumstances," based upon his own observations of Defendant, and his knowledge of Defendant's prior criminal history, to conclude that the above offense had been committed by Defendant, probable cause existed for Defendant's arrest. *Beck*, 379 U.S. at 91.

Accordingly, Defendant's Motion to Suppress (doc. no. 36) is DENIED.

**SO ORDERED** this 8th day of September, 2015.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties